Slip Op. 15 - 82

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VIET I-MEI FROZEN FOODS CO., LTD., | |
| Plaintiff, | Before: Donald C. Pogue, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 14-00092 |
| Defendant. | |

OPINION

[sustaining Department of Commerce's final results of reconducted administrative review]

Dated: July 30, 2015

Matthew R. Nicely and Alexandra B. Hess, Hughes Hubbard & Reed LLP, of Washington, DC, for the Plaintiff.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  Also on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel was Mykhaylo Gryzlov, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Andrew W. Kentz, Jordan C. Kahn, and Nathaniel Maandig Rickard, Picard Kentz & Rowe LLP, of Washington, DC, for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

**Pogue, Senior Judge:**  In this action, Plaintiff Viet

I-Mei Frozen Foods Co., Ltd., successor in interest to Grobest

& I-Mei Industrial (Vietnam) Co., Ltd. (hereinafter collectively

referred to as "Grobest"), challenges the U.S. Department of

Commerce's ("Commerce") decision not to terminate a court-ordered re-examination of Grobest in the (reconducted) fourth administrative review of the antidumping duty order on certain frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam"), and Commerce's consequent determination to establish an antidumping duty rate for Grobest using adverse facts available.[1]

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012).

As explained below, because Commerce reasonably determined to continue its re-examination of Grobest, and because the agency properly used adverse facts available, based on the requisite factual findings (which are not contested here), Commerce's final results for this reconducted review with

---

[1] See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 79 Fed. Reg. 15,309 (Dep't Commerce Mar. 19, 2014) (final results of re-conducted administrative review of [Grobest] and intent not to revoke; 2008-2009) ("Reconducted AR4 Final Results") and accompanying Issues & Decision Mem., A-552-802, ARP 08-09 (Mar. 13, 2014) ("Reconducted AR4 Final I&D Mem.") cmts. 1 & 2.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

respect to Grobest are affirmed.

## BACKGROUND

Grobest is a producer of frozen warmwater shrimp from Vietnam, which is subject to an antidumping duty order.[3]  In the fourth administrative review of that order, Grobest and the domestic shrimping industry separately requested that Grobest be reviewed.[4]  Commerce initiated the fourth review but, because the

---

[3] Compl., ECF No. 9, at ¶ 6. See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 70 Fed. Reg. 5,152 (Dep't Commerce Feb. 1, 2005) (amended final determination and antidumping duty order); Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 72 Fed. Reg. 52,052, 52,054 (Dep't Commerce Sept. 12, 2007) (final results of the first antidumping duty administrative review and first new shipper review) (reviewing Grobest as a "new shipper" of subject merchandise).

[4] [Ad Hoc Shrimp Trade Action Comm.] Req. for Admin. Reviews, Certain Frozen Warmwater Shrimp from [the Socialist Republic of] Vietnam, A-552-802, ARP 08-09 (Mar. 2, 2009), reproduced in [Conf. & Pub.] App. to Def.-Intervenor Ad Hoc Shrimp Trade Action Comm.'s [Conf. & Pub.] Resp. to Pl.'s USCIT Rule 56.2 Mot. for J. on the Agency R., ECF Nos. 38 & 39 at Tab 4 App. A, at 4; Am. Shrimp Processors Ass'n & La. Shrimp Ass'n's Req. for Admin. Review, Certain Frozen Warmwater Shrimp from [the Socialist Republic of] Vietnam, A-552-802, ARP 08-09 (Feb. 27, 2009), reproduced in [Conf. & Pub.] App. to Def.'s Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 34 ("Def.'s Conf. App.") & 35 ("Def.'s Pub. App.") at Tab 1 Attach. A, at 2; [Grobest's] Req. for Admin. Review, Revocation of Antidumping Duty Order in Part, & Entry of Appearance, Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, A-552-802, ARP 08-09 (Feb. 27, 2009), reproduced in Def.'s Conf. & Pub. Apps., ECF Nos. 34-1 & 35-1 at Tab 2, at 2. Cf. 19 U.S.C. § 1675(a)(1)(B) ("At least once during each 12-month period beginning on the anniversary of the date of the

(footnote continued)

review covered 198 companies, the agency exercised its

authority, pursuant to 19 U.S.C. § 1677f-1(c)(2)(B),[5] to limit

its individual examination to the two largest Vietnamese

exporters/producers of subject merchandise by volume (the

"mandatory respondents").[6]  Although Grobest was not selected as

a mandatory respondent, it requested to be individually examined

---

publication of . . . an antidumping duty order . . .,
[Commerce], if a request for such a review has been received and
after publication of notice of such review in the Federal
Register, shall . . . review, and determine (in accordance with
[19 U.S.C. § 1675(a)(2)]), the amount of any antidumping
duty."); 19 C.F.R. § 351.213(b)(1) ("Each year during the
anniversary month of the publication of an antidumping . . .
duty order, a domestic interested party . . . may request in
writing that [Commerce] conduct an administrative review under
[19 U.S.C. § 1675(a)(1)] of specified individual exporters or
producers covered by an order . . . ."); id. at § 351.213(b)(2)
("During the same month, an exporter or producer covered by an
order . . . may request in writing that [Commerce] conduct an
administrative review of only that person.").

[5] See 19 U.S.C. § 1677f-1(c)(2)(B) ("If it is not practicable to
make individual weighted average dumping margin determinations
[for each known exporter and producer of the subject
merchandise] because of the large number of exporters or
producers involved in the . . . review, [Commerce] may determine
the weighted average dumping margins for a reasonable number of
exporters or producers by limiting its examination to . . .
exporters and producers accounting for the largest volume of the
subject merchandise from the exporting country that can be
reasonably examined.").

[6] Selection of Resp'ts for the 2008-2009 Antidumping Duty Admin.
Review, Certain Frozen Warmwater Shrimp from the Socialist
Republic of Vietnam, A-552-802, ARP 08-09 (June 11, 2009),
reproduced in Def.'s Conf. & Pub. Apps., ECF Nos. 34-1 & 35-1
at Tab 4, at 1.

as a "voluntary respondent" pursuant to 19 U.S.C. § 1677m(a).[7]

Commerce denied this request.  Accordingly, rather than

calculating an antidumping duty rate for Grobest based on an

individual examination of Grobest's own data, Commerce assigned

to Grobest the 'all-others separate rate'[8] for the period covered

---

[7] See [Grobest's] Voluntary Resp. to [Commerce]'s Section A
Questionnaire, Certain Frozen Warmwater Shrimp from the
Socialist Republic of Vietnam, A-552-802, ARP 08-09 (July 9,
2009), reproduced in Def.'s Conf. & Pub. Apps., ECF Nos. 34-1
& 35-1 at Tab 5, at 2; [Grobest's] Voluntary Resp. to Section C
of [Commerce]'s Questionnaire, Certain Frozen Warmwater Shrimp
from the Socialist Republic of Vietnam, A-552-802, ARP 08-09
(July 31, 2009), reproduced in Def.'s Conf. & Pub. Apps.,
ECF Nos. 34-1 & 35-1 at Tab 6, at 1; [Grobest's] Voluntary Resp.
to Section D of [Commerce]'s Questionnaire, Certain Frozen
Warmwater Shrimp from the Socialist Republic of Vietnam,
A-552-802, ARP 08-09 (July 9, 2009), reproduced in Def.'s Conf.
& Pub. Apps., ECF Nos. 34-1 & 35-1 at Tab 7, at 1.  Section
1677m(a) provides that where, as here, Commerce limits its
individual examination pursuant to Section 1677f-1(c)(2),
Commerce must, in addition to calculating individual dumping
margins for the selected mandatory respondents, also calculate
individual dumping margins for any exporters/producers that
timely submit the information requested of the mandatory
respondents, unless "the number of exporters or producers who
have submitted such information is . . . so large that
individual examination of such exporters or producers would be
unduly burdensome and inhibit the timely completion of the
[administrative review]." See 19 U.S.C. § 1677m(a).

[8] Where (as here) the subject merchandise is exported from a
country that Commerce considers to be a non-market economy, the
agency generally assigns a single countrywide rate to all
exporters of subject merchandise, except those that establish
eligibility for a separate rate by demonstrating an absence of
government control over their export operations. See Certain
Frozen Warmwater Shrimp from the Socialist Republic of Vietnam,
75 Fed. Reg. 12,206, 12,210 (Dep't Commerce Mar. 15, 2010)
(preliminary results, partial rescission, and request for
                                        (footnote continued)

by this administrative review.[9]

      Grobest successfully challenged Commerce's decision to deny it an individual dumping margin in this review.[10]  At the

---

revocation, in part, of the fourth administrative review) ("In every case conducted by [Commerce] involving Vietnam, Vietnam has been treated as a non-market economy ('NME') country. . . . A designation as an NME remains in effect until it is revoked by [Commerce].  Accordingly, there is a rebuttable presumption that all companies within Vietnam are subject to government control and, thus, should be assessed a single antidumping duty rate.  It is [Commerce]'s standard policy to assign all exporters of the merchandise subject to review in NME countries a single rate unless an exporter can affirmatively demonstrate an absence of government control, both in law (*de jure*) and in fact (*de facto*), with respect to exports.") (citations omitted) (unchanged in the final results, 75 Fed. Reg. 47,771 (Dep't Commerce Aug. 9, 2010) (final results and partial rescission of antidumping duty administrative review) ("Original AR4 Final Results")).  Non-mandatory respondents that qualify for an antidumping duty rate separate from that assigned to the countrywide entity generally receive the 'all-others' rate, calculated in accordance with 19 U.S.C. § 1673d(c)(5).  See id. at 12,211 ("[T]he statute and [Commerce]'s regulations do not directly address the establishment of a rate to be applied to individual companies not selected for examination where [Commerce] limited its examination in an administrative review pursuant to [19 U.S.C. § 1677f-1(c)(2)].  [Commerce]'s practice in this regard, in cases involving limited selection based on exporters accounting for the largest volumes of trade, has been to look to [19 U.S.C. § 1673d(c)(5)], which provides instructions for calculating the all-others rate in an investigation, for guidance."); id. (explaining that Commerce did so here) (unchanged in Original AR4 Final Results, 75 Fed. Reg. 47,771).  Here, Commerce found Grobest to be eligible for a rate separate from the countrywide entity, and accordingly assigned to Grobest the all-others separate rate. Original AR4 Final Results, 75 Fed. Reg. at 47,773, 47,775.

[9] Original AR4 Final Results, 75 Fed. at 47,773-75.

[10] Grobest & I-Mei Indus. (Vietnam) Co. v. United States,

                                       (footnote continued)

close of that litigation, this Court held that Commerce's

refusal to review Grobest's voluntary submissions and establish

an individual weighted average dumping margin for Grobest in

this review was an abuse of the agency's discretion.[11]  The court

---

__ CIT __, 815 F. Supp. 2d 1342, 1360-63 (2012) ("Grobest I");
Grobest & I-Mei Indus. (Vietnam) Co. v. United States,
__ CIT __, 853 F. Supp. 2d 1352, 1362-65 (2012) ("Grobest II").

[11] In Grobest I, this Court rejected as unreasonable Commerce's
interpretation of the antidumping statute to permit the agency
to refuse to consider voluntary submissions in any proceeding in
which the agency has limited its individual examination pursuant
to 19 U.S.C § 1677f-1(c)(2). See Grobest I, __ CIT at __,
815 F. Supp. 2d at 1362 ("Commerce argues that when it limits
the number of mandatory respondents under § 1677f-1(c)(2), it
need not consider any voluntary respondents under § 1677m(a)
because it has already determined the number of respondents that
it can review (in this case two).  But this argument conflates
the two statutory provisions and renders § 1677m(a) a dead
letter."); see also id. at 1363 ("Contrary to Commerce's view
that the statute contains a discretionary grant of authority to
review voluntary respondents if such review is practical, the
statute plainly requires Commerce to conduct individual reviews
[of voluntary timely submissions] unless such reviews would be
unduly burdensome and inhibit the timely completion of the
investigation.").  The court therefore remanded for Commerce to
"make an independent determination of whether it can review
[Grobest's voluntary submissions] without such review being
unduly burdensome and inhibiting the timely completion of the
[administrative proceeding]." Id. at 1364.  On remand, Commerce
determined to invoke the 'large number' exception to Section
1677m(a)'s requirement that Commerce establish individual
dumping margins for exporters/producers that, like Grobest,
timely submit the information requested of mandatory
respondents. See Grobest II, __ CIT at __, 853 F. Supp. 2d
at 1362.  This 'large number' exception provides that Commerce
may decline to review voluntary submissions from the non-
mandatory respondents where "the number of exporters or
producers who have submitted such information is . . . so large
that individual examination of such exporters or producers would
                                            (footnote continued)

therefore ordered Commerce to individually review Grobest as a

voluntary respondent.[12]  With Grobest's consent,[13] the United

States requested and was granted entry of final judgment –

ordering Commerce to re-conduct its review of Grobest's dumping

---

be unduly burdensome and inhibit the timely completion of the
[administrative review]." 19 U.S.C. § 1677m(a)(2).  But because
Grobest was the sole non-mandatory respondent in this review
that timely submitted the information requested of the mandatory
respondents, see Grobest II, __ CIT at __, 853 F. Supp. 2d
at 1363, and because Commerce failed to show that individually
reviewing Grobest's submissions would have been *unduly*
burdensome, the court held that Commerce's refusal to review
Grobest's voluntary submissions and establish an individual
weighted average dumping margin for Grobest in this review was
an abuse of the agency's discretion. Grobest II, __ CIT at __,
853 F. Supp. 2d at 1364-65 ("When Commerce can show that the
burden of reviewing a voluntary respondent would exceed that
presented in the typical antidumping or countervailing duty
review, the court will not second guess Commerce's decision on
how to allocate its resources.  However, Commerce's failure to
make such a showing in this case, thereby rendering § 1677m(a)
meaningless, is an abuse of discretion.") (citing Grobest I,
__ CIT at __, 815 F. Supp. 2d at 1363; Uruguay Round Agreements
Act, Statement of Administrative Action, H.R. Doc. No. 103-316,
vol. 1, at 873 (1994), reprinted in 1994 U.S.C.A.A.N. 4040, 4201
("SAA") ("Commerce . . . will not discourage voluntary responses
and will endeavor to investigate all firms that voluntarily
provide timely responses in the form required . . . .")); cf.
id. at 1364 n.12 (detailing the facts asserted by Commerce to
support the agency's determination that individual review of
Grobest, the sole potential voluntary respondent, would have
been unduly burdensome).

[12] Grobest II, __ CIT at __, 853 F. Supp. 2d at 1365.

[13] See Def.'s Mot. for Entry of Final J., Ct. No. 10-00238,
ECF No. 123, at 1 (noting all parties' consent to the motion for
entry of final judgment, with the sole exception of "Plaintiff
Amanda Foods (Vietnam) Ltd., which [was] not involved [in] the
issues relating to Grobest," who took no position with respect
to this motion).

rate "by individually examining Grobest as a voluntary

respondent"[14] – so that this individual examination of Grobest

may be "conducted under Commerce's administrative authority and

not under the authority of the Court."[15]

        In accordance with this Court's judgment and order in

Grobest II, Commerce initiated a proceeding to re-conduct its

fourth administrative review of this antidumping duty order with

respect to Grobest.[16]  Two months later, however, on December 12,

---

[14] Judgment, Ct. No. 10-00238, ECF No. 124 ("[Commerce] shall re-conduct its administrative review of [Grobest] for the fourth administrative review of the antidumping duty order concerning frozen warmwater shrimp from Vietnam by individually examining Grobest as a voluntary respondent . . . .").

[15] Def.'s Mot. for Entry of Final J., Ct. No. 10-00238, ECF No. 123, at 2; see id. ("By ordering Commerce to 'conduct an individual review of Grobest as a voluntary respondent and to reconsider Grobest's revocation request in light of the results of that review,' the Court has granted Grobest the relief it sought.  All that is left is for Commerce to conduct an individual examination of Grobest.  That review should be conducted under Commerce's administrative authority and not under the authority of the Court.") (quoting Grobest II, __ CIT at __, 853 F. Supp. 2d at 1365); id. at 5 ("[T]he Court has ordered . . . that Commerce individually examine Grobest, which is the relief Grobest sought, and the Government is requesting final judgment to conduct that examination.").

[16] Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 77 Fed. Reg. 63,786, 63,786 (Dep't Commerce Oct. 17, 2012) (notice of court decision not in harmony with final results of administrative review, notice of re-conduct of administrative review of [Grobest], and notice of amended final results of administrative review) ("Reconducted AR4 Initiation") ("Pursuant to the Court's final judgment [in Grobest II], [Commerce] will re-conduct the 2008/2009 administrative review

(footnote continued)

2012, Grobest submitted to Commerce a letter seeking "to withdraw Grobest's request for examination as a voluntary respondent in the fourth administrative review of the order on frozen warmwater shrimp from Vietnam,"[17] and asking Commerce to "rescind its October 17, 2012 notice announcing that it would reconduct the 2008-2009 administrative review for Grobest."[18] Despite having consistently challenged Commerce's initial denial of Grobest's request for individual examination, despite having litigated this challenge throughout Grobest I and Grobest II, and despite having obtained the judgment in Grobest II ordering Commerce to reconduct this review and individually examine Grobest,[19] Grobest maintained that "significant management,

_____

of the antidumping duty order on shrimp from Vietnam on Grobest. [Commerce] will conduct the administrative review according to the deadlines listed in [19 U.S.C. § 1675(a)(3)], calculating the deadlines beginning from the date the final judgment was entered, i.e., September 13, 2012.").

[17] [Grobest's] Withdrawal of Req. for Voluntary Resp't Review & Revocation of Antidumping Duty Order in Part, Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, A-552-802, ARP 08-09 (Dec. 12, 2012), reproduced in [Conf. & Pub.] App. to Pl.'s Mem. in Supp. of Rule 56.2 Mot. for J. on the Agency R., ECF Nos. 25 (conf. version) & 26 (pub. version) ("Pl.'s App.") at Tab 10 Attach. 1 ("Grobest's 1st Withdrawal Req.") at 1-2.

[18] Id. at 2 (citing Reconducted AR4 Initiation, 77 Fed. Reg. 63,786).

[19] Judgment, Ct. No. 10-00238, ECF No. 124 ("[I]t is further ordered that [Commerce] shall re-conduct its administrative review of [Grobest] for the fourth administrative review of the
                                        (footnote continued)

personnel and accounting changes that have occurred at [Grobest]

since the period of review (which dates back to February 2008)

[have made it such that] the administrative and legal costs of

this examination are greater than the company wishes to incur at

this time."[20]   The domestic industry opposed Grobest's request to

terminate the re-examination.[21]

---

antidumping duty order concerning certain frozen warmwater
shrimp from Vietnam by individually examining Grobest . . . .").

[20] Grobest's 1st Withdrawal Req., ECF Nos. 25 & 26 at Tab 10
Attach. 1, at 2; see also Pl.'s Mem. in Supp. of Rule 56.2 Mot.
for J. on the Agency R., ECF No. 24 ("Pl.'s Br.") at 17 ("[O]n
December 31, 2010, the shrimp processing operation of
Grobest & I-Mei was purchased by Viet I-Mei as a result of a
break up between the former joint venture partners.  [On
December 12, 2012 – i.e., nearly two years after this change in
ownership, three months after the entry of judgment in
Grobest II, and two months after Commerce's initiation of the
reconducted review of Grobest pursuant to that judgment – ] Viet
I-Mei sought to withdraw Grobest & I-Mei as a voluntary
respondent because Viet I-Mei had undergone 'significant
management, personnel and accounting changes,' and, accordingly,
'the administrative and legal costs of th[e] examination [were]
greater than the company wishe[d] to incur . . . .'  Viet I-Mei
was no longer confident of its ability to guarantee the
provision of complete and accurate data to Commerce because much
of the relevant support documentation would be difficult to
obtain due to the change in management and ownership.") (quoting
Grobest's 1st Withdrawal Req., ECF Nos. 25 & 26 at Tab 10
Attach. 1, at 2 (alterations in Pl.'s Br.)).

[21] [Domestic Producers'] Opp'n to Grobest's Req. to Rescind
Review, Certain Frozen Warmwater Shrimp from the Socialist
Republic of Vietnam, A-552-802, ARP 08-09 (Jan. 25, 2013),
reproduced in Pl.'s App., ECF Nos. 25 & 26 at Tab 10 Attach. 2
(noting that Petitioners timely requested review of Grobest, and
opposing Grobest's request to terminate its individual
examination); [Domestic Producers'] Resp. to [Grobest] & Req.
                                        (footnote continued)

Commerce declined to abort its re-examination of Grobest, and issued a supplemental questionnaire requiring Grobest to "address[] certain deficiencies"[22] discovered in its original questionnaire responses with regard to, *inter alia*, Grobest's reported quantity and value of subject merchandise sold to unaffiliated U.S. customers during the period of review.[23]  In the cover letter sent with this supplemental

---

for Appl. of Adverse Facts Available, Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, A-552-802, ARP 08-09 (Feb. 20, 2013), reproduced in Def.'s Conf. & Pub. Apps., ECF Nos. 34 & 35 at Tab 9 (reiterating Petitioners' opposition to Grobest's withdrawal request, and suggesting that Commerce should employ adverse inferences when selecting from among the facts available to calculate an individualized dumping margin for Grobest in the absence of Grobest's cooperation).

[22] Cover Letter to Commerce's Supplemental Questionnaire to Grobest, Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, A-552-802, ARP 08-09 (Jan. 15, 2013), reproduced in Def.'s Conf. App., ECF No. 34-2 at Tab 15; Def.'s Supplement to [Pub.] App., ECF No. 45-1 ("Grobest's Suppl. Quest.") at 1.

[23] Id. at 3 ¶¶ 1-2.  Commerce also requested clarification with regard to discrepancies in Grobest's reported "quantity and value of shipments to [Grobest's] affiliated importer . . . ." Id. at ¶ 1.  Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee points out that this importer was also implicated in proceedings involving a separate antidumping duty order on frozen warmwater shrimp from the People's Republic of China, in which Commerce found this importer to have been involved in the provision of misinformation sufficient to impeach the credibility of the (Chinese) exporter/producer at issue in those proceedings. See Def.-Intervenor Ad Hoc Shrimp Trade Action Comm.'s [Conf. & Pub.] Resp. to Pl.'s USCIT Rule 56.2 Mot. for J. on the Agency R., ECF Nos. 36 (conf. version) & 37 (pub. version) ("Def.-Int.'s Br.") at 10-12 (discussing findings made
(footnote continued)

questionnaire, Commerce stated that a response from Grobest was

required, in proper format, "no later than close of business

January 29, 2013,"[24] and warned that "[u]pon receipt of a

response that is incomplete or deficient to the extent that

[Commerce] determines it to be non-responsive[,] [Commerce] will

not issue additional supplemental questionnaires but will use

facts available," adding that "[i]f [Grobest] fail[s] to

cooperate . . . by not acting to the best of [its] ability to

comply with [Commerce's] request for information, [Commerce] may

use information that is adverse to [Grobest's] interest in

---

during the sixth administrative review of the antidumping duty
order on frozen warmwater shrimp from the People's Republic of
China); cf. Certain Frozen Warmwater Shrimp from the People's
Republic of China, 77 Fed. Reg. 53,856, 53,856 n.2 (Dep't
Commerce Sept. 4, 2012) (final results, partial rescission of
sixth antidumping duty administrative review and determination
not to revoke in part) and accompanying Issues & Decision Mem.,
A-570-893, ARP 10-11 (Aug. 27, 2012); Ad Hoc Shrimp Trade Action
Comm. v. United States, __ CIT __, 992 F. Supp. 2d 1285 (2014)
(discussing the relevant facts and legal determinations).
But see Reconducted AR4 Final I&D Mem. cmt. 2 at 7 ("With regard
to Domestic Producers' allegation that Grobest's lack of
cooperation should be viewed in light of [this context],
Domestic Producers referenced the information that is on the
record of another proceeding, but did not place it on the record
of this review.  Therefore, we do not find that this
re-conducted administrative review is the correct venue to
address this allegation.").

[24] Cover Letter to Grobest's Suppl. Quest., ECF No. 34-2
at Tab 15 & ECF No. 45-1, at 1.

conducting its analysis."[25]

On January 29, 2013 (i.e., the due date set for its
response to Commerce's supplemental questionnaire), Grobest
again requested that Commerce terminate the re-examination,
without responding to Commerce's supplemental inquiries.[26]
Commerce acknowledged and denied Grobest's request, and again
required that Grobest submit responses to Commerce's
supplemental questionnaire, giving the company until close of
business on February 13, 2013, to do so.[27]  But Grobest again
refused to respond to Commerce's inquiries.  Instead, on the due
date set for its responsive submission, Grobest "reiterate[d]
[its] proposal that [Commerce] discontinue examination of
Grobest as a voluntary respondent in the fourth administrative
review and maintain the Final Results for Grobest as originally

---

[25] Id. at 2.

[26] [Grobest's] Resp. to Jan. 15, 2013 Supplemental Questionnaire
in Re-examination of [Grobest's] Voluntary Resps., Certain
Frozen Warmwater Shrimp from the Socialist Republic of Vietnam,
A-552-802, ARP 08-09 (Jan. 29, 2013), reproduced in Pl.'s App.,
ECF Nos. 25 & 26 at Tab 10 Attach. 3 ("Grobest's 2d Withdrawal
Req.") (noting that Commerce had not explicitly responded to
Grobest's request to terminate the re-examination).

[27] Cover Letter to Commerce's Reissued Supplemental Questionnaire
to Grobest, Certain Frozen Warmwater Shrimp from the Socialist
Republic of Vietnam, A-552-802, ARP 08-09 (Feb. 6, 2013),
reproduced in Def.'s Conf. App., ECF No. 34-2 at Tab 16, at 2.

issued,"[28] again stating only that "the company is unable to continue with the examination of Grobest's voluntary responses due to the significant management, personnel and accounting changes that have occurred at [Grobest] since the period of review,"[29] and that "[t]he administrative and legal costs of this examination are greater than the company wishes to incur at this time."[30]

Responding to Grobest's refusal to cooperate with Commerce's requests for information, Commerce found that Grobest withheld information requested of it and impeded the proceeding, within the meaning of 19 U.S.C. §§ 1677e(a)(2)(A) and (C),[31] and

---

[28] [Grobest's] Resp. to [Commerce]'s Supplemental Questionnaire & Pet'rs' Objection to Rescission, Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, A-552-802, ARP 08-09 (Feb. 13, 2013), reproduced in Pl.'s App., ECF Nos. 25 & 26 at Tab 10 Attach. 4 ("Grobest's Resp. to Suppl. Quest.") at 4.

[29] Id. at 2.

[30] Id.

[31] See 19 U.S.C. §§ 1677e(a)(2)(A) & (C) ("If . . . an interested party or any other person . . . (A) withholds information that has been requested by [Commerce] . . . [or] (C) significantly impedes a proceeding . . . [Commerce] shall, subject to [19 U.S.C. § 1677m(d) (requiring Commerce to "promptly inform the person submitting the response of the nature of the deficiency" and, "to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of [the review]")], use the facts otherwise available in reaching the applicable determination . . . .").

concluded that Grobest failed to cooperate, within the meaning

of 19 U.S.C. § 1677e(b),[32] by not acting to the best of its

ability to comply with Commerce's requests.[33]  Accordingly, the

agency employed adverse inferences when selecting from among the

facts otherwise available to establish Grobest's individual

dumping margin for this proceeding.[34]  Explaining that its

practice in this regard is to ensure that the dumping rate

established for the non-cooperative respondent is "sufficiently

adverse 'as to effectuate the statutory purpose of the adverse

facts available rule to induce respondents to provide [Commerce]

---

[32] See 19 U.S.C. § 1677e(b) ("If [Commerce] finds that an
interested party has failed to cooperate by not acting to the
best of its ability to comply with a request for information
from [Commerce], [Commerce], in reaching the applicable
determination under this subtitle, may use an inference that is
adverse to the interests of that party in selecting from among
the facts otherwise available.  Such adverse inference may
include reliance on information derived from – (1) the petition,
(2) a final determination in the investigation under this
subtitle, (3) any previous review under section 1675 of this
title or determination under section 1675b of this title, or
(4) any other information placed on the record.").

[33] Decision Mem. for Prelim. Results of Re-Conducted Admin.
Review, Certain Frozen Warmwater Shrimp from the Socialist
Republic of Vietnam, A-552-802, ARP 08-09 (Sept. 10, 2013)
(adopted in 78 Fed. Reg. 57,352, 57,353 (Dep't Commerce Sept.
18, 2013) (preliminary results of re-conducted administrative
review of [Grobest] and intent not to revoke; 2008-2009))
("Reconducted AR4 Prelim. I&D Mem.") at 7-8 (unchanged in
Reconducted AR4 Final I&D Mem. cmt. 2 at 6-7).

[34] Id. (relying on 19 U.S.C. § 1677e(b)).

Case 1:14-cv-00092-DCP   Document 51   Filed 07/30/15   Page 17 of 39

Court No. 14-00092                                    Page 17

with complete and accurate information in a timely manner,'"[35] as well as to ensure "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully,"[36] Commerce assigned to Grobest a rate of 25.76 percent, which represents "the highest dumping margin on the record of any segment of this proceeding."[37]  Commerce found that this rate "is appropriate for Grobest in that it is sufficient to ensure that Grobest does not benefit from failing to cooperate in [the reconducted] review by refusing to respond to [Commerce]'s request for complete information regarding its affiliations, sales of subject merchandise, and factors of production."[38]

        Grobest now challenges Commerce's decision to deny Grobest's request to terminate its individual examination as a voluntary respondent and reinstate the final results of the

---

[35] Id. at 8 (quoting SAA, H.R. Rep. No. 103-316, vol. 1, at 870).

[36] Id. at 9 (citing SAA, H.R. Rep. No. 103-316, vol. 1, at 870; Certain Frozen Canned Warmwater Shrimp from Brazil, 69 Fed. Reg. 76,910 (Dep't Commerce Dec. 23, 2004) (final determination of sales at less than fair value); D&L Supply Co. v. United States, 113 F.3d 1220, 1223 (Fed. Cir. 1997)).

[37] Id. (citation omitted) (unchanged in Reconducted AR4 Final Results, 79 Fed. Reg. at 15,310).

[38] Id.

fourth review with respect to Grobest as originally conducted.[39]

Beyond characterizing its rate as "punitive," Grobest makes no

argument as to the specific rate assigned to it in the

reconducted review.[40]   Rather, Grobest contends solely that

"Commerce exceeded its statutory authority when it refused to

permit [Grobest] to withdraw [its] individual review request,"[41]

which "resulted in an impermissibly punitive" rate for Grobest.[42]

## STANDARD OF REVIEW

        The court upholds Commerce's antidumping

determinations if they are in accordance with law and supported

by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).  Where,

as here, the antidumping statute does not directly address the

legal question before the agency, the court will defer to

Commerce's construction of its authority if it is reasonable.

Timken Co. v. United States, 354 F.3d 1334, 1342 (Fed.

---

[39] Pl.'s Br., ECF No. 24, at 12-22.

[40] See id. at 12-22 (generally addressing all arguments to
Commerce's refusal to permit Grobest's withdrawal from
individual examination and presenting no argument regarding
Commerce's finding that Grobest failed to cooperate, the
consequent determination to use adverse facts available, or the
specific methodology employed to arrive at the rate ultimately
selected for Grobest in the reconducted review).

[41] Id. at 22.

[42] Id. at 20.

Case 1:14-cv-00092-DCP   Document 51   Filed 07/30/15   Page 19 of 39

Cir. 2004) (relying on <u>Chevron U.S.A. Inc. v. Natural Res. Def.</u>
<u>Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)).

 Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion," <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197,
229 (1938), and "can be translated roughly to mean 'is [the
determination] unreasonable?'" <u>Nippon Steel Corp. v. United</u>
<u>States</u>, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted,
alteration in the original).

## DISCUSSION

 Grobest argues that "pursuant to 19 U.S.C. § 1677m and
19 C.F.R. § 351.213(d), Commerce should have withdrawn [Grobest]
as a voluntary respondent from the review at the request of
[Grobest]."[43]  The Government asserts, first,[44] that "Grobest's
actions in obtaining the final judgment ordering Commerce to
examine it individually estop it from challenging Commerce's
individual examination now," because it is "well-established
that 'where a party assumes a certain position in a legal
proceeding and succeeds in maintaining that position, he may not

---

[43] Pl.'s Br., ECF No. 24, at 13.

[44] Although the Government presents this argument as a secondary,
alternative argument to its defense of Commerce's determination
on the merits, the question of estoppel logically precedes the
issue of the merits, and so must be addressed first.

thereafter, simply because his interests have changed, assume a

contrary position.'"[45]  In the alternative, the United States

argues that Commerce reasonably interpreted the statute and

relevant regulations not to require the agency to terminate

Grobest's court-ordered re-examination based solely upon

Grobest's unilateral decision not to participate in the

proceeding,[46] and contends that on the record presented here,

Commerce reasonably determined to proceed with the re-

examination and to use adverse facts available when Grobest

withheld information and failed to cooperate to the best of its

ability.[47]  Each argument is addressed in turn.

I. Judicial Estoppel Is Not Appropriate Here.

          Judicial estoppel is "an equitable doctrine invoked by

---

[45] Def.'s Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the
Agency R., ECF No. 33 ("Def.'s Br.") at 20 (quoting New
Hampshire v. Maine, 532 U.S. 742, 749 (2001) (citation
omitted)); see also id. at 23 ("After tying up resources of this
Court, the agency, and other interested parties for many months
in litigation and obtaining the final judgment that ordered
Commerce to examine the company individually, Grobest later
unilaterally decided that the exigencies of the moment have
changed and that its individual examination is unnecessary.
This is the type of reversal that the judicial estoppel doctrine
is designed to prevent.  Thus, the Court should not countenance
Grobest's maneuvering.").

[46] Id. at 10-15.

[47] Id. at 18-19.

a court at its discretion,"[48] which is "intended to prevent

improper use of judicial machinery."[49]  Although "the

circumstances under which judicial estoppel may appropriately be

invoked are probably not reducible to any general formulation of

principle,"[50] several factors[51] may "typically inform the decision

whether to apply the doctrine in a particular case."[52]  Most

importantly, "a party's later position must be 'clearly

---

[48] New Hampshire, 532 U.S. at 750; see also Trs. in Bankr. of N.
Am. Rubber Thread Co. v. United States, 593 F.3d 1346, 1351
(Fed. Cir. 2010) ("NART") (reviewing this Court's decision
regarding the applicability of judicial estoppel for abuse of
discretion) (citing Data Gen. Corp. v. Johnson, 78 F.3d 1556,
1565 (Fed. Cir. 1996)).

[49] New Hampshire, 532 U.S. at 750 (quotation marks and citations
omitted). See also Data Gen. Corp., 78 F.3d at 1565 ("Judicial
estoppel is designed to prevent the perversion of the judicial
process and, as such, is intended to protect the courts rather
than the litigants.") (citations omitted).

[50] New Hampshire, 532 U.S. at 750 (alternations, quotation marks,
and citations omitted).

[51] Cf. id. at 751 ("In enumerating these factors, we do not
establish inflexible prerequisites or an exhaustive formula for
determining the applicability of judicial estoppel.  Additional
considerations may inform the doctrine's application in specific
factual contexts.  . . . [W]e simply observe that [these]
factors [may] tip the balance of equities in favor of barring [a
particular claim].").  See NART, 593 F.3d at 1354 (reiterating
these New Hampshire factors, "which the Supreme Court did not
intend to be exclusive," as informing the court's "determination
of whether a party's inconsistent legal positions constitute
judicial estoppel").

[52] New Hampshire, 532 U.S. at 750.

inconsistent' with its earlier position."[53]  In addition,

judicial estoppel is appropriate where "the party has succeeded

in persuading a court to accept that party's earlier position,

so that judicial acceptance of an inconsistent position in a

later proceeding would create 'the perception that either the

first or the second court was misled,'"[54] although "it may be

appropriate to resist application of judicial estoppel 'when a

party's prior position was based on inadvertence or mistake.'"[55]

       Here, Grobest contends that it sought to withdraw as a

---

[53] Id. (quoting United States v. Hook, 195 F.3d 299, 306
(7th Cir. 1999); In re Coastal Plains, Inc., 179 F.3d 197, 206
(5th Cir. 1999); Hossaini v. W. Mo. Med. Ctr., 140 F.3d 1140,
1143 (8th Cir. 1998); Maharaj v. Bankamerica Corp., 128 F.3d 94,
98 (2d Cir. 1997)).  A related consideration is "whether the
party seeking to assert an inconsistent position would derive an
unfair advantage or impose an unfair detriment on the opposing
party if not estopped." New Hampshire, 532 U.S. at 751
(citations omitted).

[54] Id. (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599
(6th Cir. 1982)); see also id. at 750-51 (emphasizing the "risk
of inconsistent court determinations" as the relevant "threat to
judicial integrity") (quotation marks and citations omitted).

[55] Id. at 753 (quoting John S. Clark Co. v. Faggert & Frieden,
P.C., 65 F.3d 26, 29 (4th Cir. 1995) and citing In re Corey,
892 F.2d 829, 836 (9th Cir. 1989); Konstantinidis v. Chen,
626 F.2d 933, 939 (D.C. Cir. 1980)); cf. NART, 593 F.3d at 1357
(applying judicial estoppel where a party advanced a position
inconsistent with its successful prior litigating position,
because the party had simply "changed its mind" and "did not
argue that [its] original [position] was erroneous, that there
were any objective factual changes that justified such a change
[in position], or that its 'prior position was based on
inadvertence or mistake.'") (quoting New Hampshire, 532 U.S.
at 753).

voluntary respondent because "on December 31, 2010, the shrimp processing operation of Grobest & I-Mei was purchased by Viet I-Mei," and "Viet I-Mei was no longer confident of its ability to guarantee the provision of complete and accurate data to Commerce because much of the relevant support documentation would be difficult to obtain due to the change in management and ownership."[56]  But as Defendant points out,[57] this change of ownership occurred nearly *two years* prior to the entry of judgment, in favor of Grobest, on its initial request for individual examination.[58]  In that time, Grobest could easily have voluntarily dismissed its litigation in demand of individual examination (thereby obtaining the very result that Grobest now seeks),[59] but chose not to do so.[60]

---

[56] Pl.'s Br., ECF No. 24, at 17.

[57] Def.'s Br., ECF No. 33, at 17.

[58] See Judgment, Ct. No. 10-00238, ECF No. 124 (entering final judgment, on September 13, 2012, ordering Commerce to re-conduct the administrative review by individually examining Grobest).

[59] Cf. Hubscher Ribbon Corp. v. United States, __ CIT __, 979 F. Supp. 2d 1360, 1363 (2014) (describing a case in which, in response to Commerce's decision on remand to reopen an investigation and individually examine the plaintiff – a separate-rate respondent who had challenged the separate rate assigned to it – the plaintiff "voluntarily dismissed the litigation rather than be individually reviewed, conceding that all its entries would be covered by the [previously challenged] separate rate") (citation omitted).

[60] Nor did any party move for relief from the judgment, which
                                        (footnote continued)

Nevertheless, Grobest's earlier position – that Commerce's decision to reject Grobest's request to participate as a voluntary respondent pursuant to 19 U.S.C. § 1677m(a) was not in accordance with law – is not clearly inconsistent with its current position – that Commerce's decision not to terminate the individual examination upon Grobest's subsequent request was also contrary to law.  Unlike in <u>New Hampshire</u>,[61] acceptance of both of Grobest's positions – i.e., that Commerce erred initially by not granting Grobest voluntary respondent status and then erred again by not terminating Grobest's examination upon the latter's request – would not lead to logically inconsistent court decisions, undermining the integrity of the

---

ordered that Commerce "shall re-conduct its administrative review of [Grobest] . . . by individually examining Grobest as a voluntary respondent," Judgment, Ct.  No. 10-00238, ECF No. 124, once it was entered. <u>Cf.</u> USCIT R. 60(b)(6) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief.").

[61] <u>See</u> <u>New Hampshire</u>, 532 U.S. at 755 ("Having convinced this Court to accept one interpretation of 'Middle of the River,' and having benefited from that interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional advantage at Maine's expense. *Were we to accept New Hampshire's latest view, the risk of inconsistent court determinations would become a reality.*  We cannot interpret 'Middle of the River' in the 1740 decree to mean two different things along the same boundary line without undermining the integrity of the judicial process.") (emphasis added; quotation marks and citation omitted).

judicial process.[62]  Put otherwise, the question in <u>Grobest I</u> and

<u>Grobest II</u> was whether Commerce's decision to deny Grobest's

voluntary request for individual examination was reasonable on

the record presented, whereas the question now before the court

concerns the reasonableness of Commerce's separate decision to

continue with the examination after Grobest's request to

terminate it.  Because these are logically discrete issues, and

because affirmative answers to both of these questions would not

inherently be mutually exclusive, the doctrine of judicial

estoppel, which is applicable solely in cases of manifest

contradiction,[63] is not appropriate here.  Accordingly, the court

moves on to the merits of Grobest's challenge.


## II.  Commerce Was Not Required to Terminate Grobest's Individual Re-Examination Upon Grobest's Request.

          As Grobest concedes, "[t]he U.S. antidumping statutory

---

[62] <u>Cf. NART</u>, 593 F.3d at 1358 (J. Gajarsa, dissenting)
("[J]udicial estoppel no longer serves its purpose when . . . a
court faces no risk of reaching an inconsistent
determination.").

[63] <u>See</u> <u>New Hampshire</u>, 532 U.S. at 749 ("[J]udicial estoppel . . .
prevents a party from prevailing in one phase of a case on an
argument and then relying on a *contradictory* argument to prevail
in another phase.") (emphasis added); <u>Davis v. Wakelee</u>, 156 U.S.
680, 689 (1895) ("[A] party [who] assumes a certain position in
a legal proceeding, and succeeds in maintaining that position,
. . . may not thereafter, simply because his interests have
changed, assume a *contrary position*, especially if it be to the
prejudice of the party who has acquiesced in the position
formerly taken by him.") (emphasis added).

and regulatory framework does not expressly contemplate a voluntary respondent's rescission of a request for individual review."[64]  Commerce's regulations do provide, however, that "[a] voluntary respondent accepted for individual examination . . . will be subject to the same requirements as an exporter or producer initially selected by [Commerce] for individual examination under [19 U.S.C. § 1677f-1(c)(2)], including . . ., where applicable, the use of the facts available under [19 U.S.C. § 1677e] and [19 C.F.R.] § 351.308."[65]  This regulation subjects voluntary respondents to the same requirements as the mandatory respondents, including specifically to the requirements of Section 1677e – which expressly permits Commerce to resort to adverse inferences in selecting from among the facts otherwise available when the respondent fails to act to the best of its ability to comply with Commerce's requests for information.[66]  Commerce is therefore correct that voluntary respondents are not entitled to unilaterally dictate their level of participation once accepted for individual examination.  As Defendant points out, "[i]f it were otherwise, the voluntary respondent process would be

---

[64] Pl.'s Br., ECF No. 24, at 15.

[65] 19 C.F.R. 351.204(d)(2) (2014).

[66] 19 U.S.C. §§ 1677e(a)-(b).

subject to potential manipulation by companies seeking

individual review and then declining to proceed if the review

started to look unfavorable."[67]

      Nor was Commerce required (as Grobest contends) to

discontinue its individual re-examination of Grobest because

Grobest's request to terminate the examination was made within

90 days of the judgment order in <u>Grobest II</u>.[68]  Commerce's

regulations provide that the agency will rescind an

administrative review if the party that requested such review

withdraws its request within 90 days of the date of publication

of the notice of its initiation (although Commerce may extend

this 90-day limit if the agency "decides that it is reasonable

to do so").[69]  But, as is clear from its context, this regulatory

provision concerns the complete rescission of an administrative

review with respect to a particular respondent (where all

parties who have requested the review withdraw those requests),

rather than the cessation of individual examination for a

---

[67] Def.'s Br., ECF No. 33, at 12.

[68] <u>See</u> Pl.'s Br., ECF No. 24, at 16-19 (arguing that Commerce
should have treated Grobest's request to terminate the re-
examination as a request to rescind individual review under
19 C.F.R. § 351.213(d)(1), calculating that regulation's 90-day
deadline from the date of the judgment order in <u>Grobest II</u>).

[69] 19 C.F.R. § 351.213(d)(1).

respondent who prefers the all-others rate.[70]  Here, regardless

of Grobest's desire to continue with the review (and regardless

of the timing and legal effect of any communication from Grobest

to Commerce in this regard), the Petitioners had also requested

that Grobest be reviewed and, as this request was never

withdrawn, the regulatory provision for rescission is not

applicable.[71]

---

[70] The subsection is entitled "rescission of administrative
review" and contains three subparts describing circumstances
under which Commerce will "rescind an administrative review" –
(1) where the party that requested the review timely withdraws
its request; (2) where Commerce had self-initiated the review
and decides to discontinue it; and (3) where Commerce concludes
that the respondent under review had no shipments of subject
merchandise to the United States during the period covered by
the review.  When viewed together, all three scenarios are
addressed to the complete *rescission* of a review with respect to
a particular respondent.  Moreover, this subsection (addressed
to the "rescission of administrative reviews") is situated
within a broader section (dealing with the conduct of
administrative reviews generally) such that it appears
immediately after the subsections concerning the initiation of
such reviews, and precedes the subsequent subsections addressed
to the actual conduct of these reviews (including a subsequent
section addressed specifically to "voluntary respondents,"
19 C.F.R. § 351.213(f) (providing that Commerce "will examine
voluntary respondents in accordance with [19 U.S.C. § 1677m(a)]
and [19 C.F.R.] § 351.204(d)")), again suggesting that this
subsection concerns the complete *rescission* of a review of a
particular respondent, rather than (as Grobest's argument
suggests), the termination of a respondent's individual
examination in favor of assigning such respondent the 'all
others' rate.

[71] See Reconducted AR4 Final I&D Mem. cmt. 1 at 4 ("Even if
Grobest properly withdrew its request for review . . . (which it
did not), . . . Petitioners requested that [Commerce] review
                                           (footnote continued)

At oral argument, counsel for Grobest conceded that 19 C.F.R. § 351.213(d)(1) is addressed to the rescission of reviews and is therefore not *directly* applicable.  Instead Grobest argued that the court should look to this regulation by way of analogy, and thereby evaluate Commerce's decision not to terminate Grobest's individual examination upon Grobest's request by using the "balancing test" that Grobest contends is generally used to evaluate Commerce's decisions under 19 C.F.R. § 351.213(d)(1).[72]  But this argument is also unpersuasive.

---

Grobest and did not withdraw their request for review.") (citation to Petitioners' request for review of Grobest omitted); *supra* note 21 (providing citations to the domestic industry's opposition to Grobest's request to termination the re-examination). Cf. Ferro Union, Inc. v. United States, 23 CIT 178, 180-83 (1999) (sustaining Commerce's decision not to rescind review of respondent that withdrew its request within 90 days, because petitioners had not withdrawn their independent request for review of that respondent).

[72] See Oral Arg. Tr., ECF No. 50, at 10 (referring to "the preamble to the antidumping regulations"); Pl.'s Br., ECF No. 24, at 16 (citing Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,317 (Dep't Commerce May 19, 1997) (final rule) as "the Preamble"); Antidumping Duties; Countervailing Duties, 62 Fed. Reg. at 27,317 (responding to commentary on then-proposed § 351.213(d)(1) "and its 90-day limit on withdrawals of a request for review"; rejecting a suggestion that the provision be modified to permit rescission outside the 90-day window, upon withdrawal of the request(s) and in the absence of objections; explaining that Commerce "must have the ability to deny withdrawals of requests for review, even in situations where no party objects" in order to prevent situations such as, "[f]or example," . . . [where] a party requests a review, [Commerce] devotes considerable time and resources to the review, and then the party withdraws its

(footnote continued)

First, the analogy is strained at best.  Grobest seeks to apply

the rescission regulation to a situation in which it does not

seek rescission of its review, but rather would prefer the all-

others rate over an individualized rate – an option that is

clearly unavailable to the mandatory respondents upon whom the

voluntary respondents' treatment is required to be modelled.[73]

Next, the "balancing test" to which Grobest refers as a

mandatory set of considerations is instead merely part of

Commerce's explanation for *rejecting* proposals to require the

agency to rescind under certain conditions.  Commerce's practice

does not set out a mandatory balancing test; the agency instead

concluded that "the decision to rescind a review will be at

[Commerce]'s discretion."[74]  Finally, even if 19 C.F.R.

§ 351.213(d)(1) were more perfectly analogous, and even if

---

requests once it ascertains that the results of the review are
not likely to be in its favor"; and concluding that "if a
request for rescission is made after the expiration of the 90-
day deadline, the decision to rescind a review will be at
[Commerce]'s discretion").

[73] 19 C.F.R. § 351.213(f); id. at § 351.204(d)(2) ("A voluntary
respondent accepted for individual examination . . . will be
subject to the same requirements as [the mandatory respondents],
including . . ., where applicable, the use of the facts
available under [19 U.S.C. § 1677e] and [19 C.F.R.] § 351.308[,
both of which provide authorization for the use of adverse
inference in response to companies' failure to cooperate.]").

[74] See *supra* note 72 (quoting relevant language).

Grobest were correct that Commerce should have applied a
mandatory balancing test that weighed, "[o]n the one hand, the
respondent's request to withdraw, and on the other hand the
amount of resources that Commerce has expended at the moment
that request is made and the desire to discourage procedural
abuses,"[75] the weight of the evidence here supports the
reasonableness of Commerce's decision.   Contrary to Grobest's
contentions, Commerce had not merely issued a notice of
initiation for the court-ordered reconducted review when Grobest
requested to terminate the proceeding.   Rather, as is evident
from the agency's supplemental questionnaire – which Commerce
sent to Grobest shortly after the latter's withdrawal request
(keeping the holiday break in mind)[76] – upon initiating this
proceeding Commerce promptly examined Grobest's submissions.
Indeed, Commerce found numerous material discrepancies in
Grobest's representations with regard to the company's
affiliations, the quantity and value of its sales of subject
merchandise, and its factors of production.[77]   Thus this is

---

[75] Oral Arg. Tr., ECF No. 50, at 10.

[76] See Grobest's Suppl. Quest., ECF No. 45-1 (dated Jan. 15,
2013); Grobest's 1st Withdrawal Req., ECF Nos. 25 & 26 at Tab 10
Attach. 1 (dated Dec. 12, 2012).

[77] See Grobest's Suppl. Quest., ECF No. 45-1, at 1; Reconducted
AR4 Prelim. I&D Mem. at 9 (explaining the agency's concern "that
                                              (footnote continued)

precisely the situation contemplated by the example Commerce

provided in <u>Antidumping Duties; Countervailing Duties</u>, 62 Fed.

Reg. at 27,317 – on which Grobest now relies in support of its

balancing test – where "a party request[ed] a review, [Commerce]

devote[d] considerable time and resources to the review, and

then the party withdr[ew] its requests once it ascertain[ed]

that the results of the review [were] not likely to be in its

favor."

     Moreover the issue here, as Grobest concedes, is not

whether Commerce should have *rescinded* its review of Grobest,

but instead whether Commerce should have permitted Grobest to

elect to keep its 'all-others' rate rather than cooperate in the

individualized re-examination that Commerce initiated pursuant

to the judgment order in <u>Grobest II</u>.[78]   On this question,

_____

Grobest does not benefit from failing to cooperate in [the
reconducted] review by refusing to respond to [Commerce]'s
request for complete information regarding its affiliations,
sales of subject merchandise, and factors of production")
(unchanged in <u>Reconducted AR4 Final Results</u>, 79 Fed. Reg. at
15,310).

[78] <u>See, e.g.</u>, <u>Grobest's Resp. to Suppl. Quest.</u>, ECF Nos. 25 & 26
at Tab 10 Attach. 4, at 2 ("[Grobest] did not request that the
fourth administrative review be rescinded for Grobest.  We
merely requested rescission of the company's full examination as
a voluntary respondent.  . . .  Grobest was already subject to
[the fourth review] (based on both Grobest's and Domestic
Producers' review requests) and was assigned a separate rate of
3.92%, based on the average of the mandatory respondents'
dumping rates . . . .  [Grobest's] request would not upset this
(footnote continued)

Commerce's regulations provide that, as an accepted voluntary respondent, Grobest was subject to the same requirements as the mandatory respondents.  Just as "[m]andatory respondents may not dictate their level of participation for the purposes of determining a more favorable separate rate based on another party's data . . . [and therefore] must provide all information that has been requested by [Commerce] and not selectively choose which requests to respond to and which information to submit,"[79] voluntary respondents accepted for individual examination similarly may not refuse to respond to Commerce's requests for information in order to obtain a more favorable 'all-others' rate.

        Grobest argues that, rather than attempting to manipulate the system and obtain a more favorable 'all-others' rate, the company realized that, having gone through a messy dissolution of the joint venture that constituted Grobest at the time that it initially requested to be individually examined, it

---

[previously assigned] rate [i.e., Grobest's request would permit the company to elect to keep its predetermined 'all-others' rate].").

[79] Issues & Decision Mem., Wooden Bedroom Furniture from the People's Republic of China, A-570-890, ARP 1/12-12/12 (Aug. 25, 2014) (adopted in 79 Fed. Reg. 51,954 (Dep't Commerce Sept. 2, 2014) (final results of antidumping duty administrative review and new shipper review; 2012)) cmt. 2 at 8.

was no longer able to "carry out a proper verification" and

certify to the accuracy of its responses to Commerce's

inquiries, contending that it alerted Commerce to this as soon

as the situation became apparent.[80]  But the statute provides a

procedure for companies experiencing difficulties with

responding to Commerce's inquiries, which Grobest neglected to

follow.  Specifically, "[i]f an interested party, promptly after

receiving a request from [Commerce] for information, notifies

[Commerce] that such party is unable to submit the information

requested in the requested form and manner, *together with a full*

*explanation and suggested alternative forms in which such party*

*is able to submit the information*, [then Commerce] shall

consider the ability of the interested party to submit the

information in the requested form and manner and may modify such

requirements to the extent necessary to avoid imposing an

unreasonable burden on that party."[81]  But rather than providing

---

[80] See Oral Arg. Tr, ECF No. 50, at 37; see also id. at 5-6, 11-12.

[81] 19 U.S.C. 1677m(c)(1) (emphasis added); see also id. at 1677m(c)(2) ("[Commerce] shall take into account any difficulties experienced by interested parties, particularly small companies, in supplying information requested by [Commerce] in connection with [antidumping administrative] reviews under this subtitle, and shall provide to such interested parties any assistance that is practicable in supplying such information.").

a full explanation and suggested alternatives, Grobest simply
stated that "the administrative and legal costs of this
examination are greater than the company wishes to incur at this
time."[82]  This is not an explanation of any difficulties that
Grobest may have had with submitting the information requested,
but rather is a conscious decision not to incur the costs of
cooperating with Commerce's examination.

Thus, for all of the foregoing reasons, Commerce was
not *required* by any statutory or regulatory authority to abort
its court-ordered individual re-examination of Grobest simply
because Grobest changed its mind regarding the benefit of such
examination.[83]  In evaluating Grobest's request to discontinue

_____

[82] Grobest's 1st Withdrawal Req., ECF Nos. 25 & 26 at Tab 10
Attach. 1, at 2; Grobest's 2d Withdrawal Req., ECF Nos. 25 & 26
at Tab 10 Attach. 3.

[83] The question of whether Commerce *may have* discontinued the
examination is not at issue here, see Reconducted AR4 Final I&D
Mem. cmt. 1 at 5 ("[Commerce] does not find it necessary to
address [the Petitioners'] argument [that Commerce does not have
authority to terminate the individualized examination of a
voluntary respondent once it initiates], because [Commerce]
determined not to [abort Grobest's individualized
investigation]."), and accordingly no opinion in this regard is
expressed herein. See also Def.'s Br., ECF No. 33, at 11 n.5
("The issue of whether a voluntary respondent may withdraw its
request before it has been accepted for individual examination
is not presented here."); cf. 19 C.F.R. § 351.204(d) (providing
that "[a] voluntary respondent *accepted for individual
examination* under [19 U.S.C. § 1677m(a) and 19 C.F.R.
§ 351.204(d)(1)] will be subject to the same requirements as
[mandatory respondents]") (emphasis added).  Although Commerce
                                            (footnote continued)

the re-examination, Commerce emphasized the significant

resources that the agency had already expended in connection

with Grobest's initial demand for individualized review,[84] and

explained that while "Grobest's principle contention is that it

is unwilling to incur the administrative and legal costs

associated with participating in the administrative review[,]

. . . a company may not impede an antidumping proceeding by

refusing to incur administrative and legal costs associated with

participating in the proceeding."[85]   Just as the 90-day

limitation on withdrawing requests for review aims to "prevent

abuse of the procedures for requesting and withdrawing a review

. . . [when Commerce] devotes considerable time and resources to

the review, and then the party withdraws its requests once it

ascertains that the results of the review are not likely to be

---

accurately states that it was required by this Court's judgment
order in Grobest II to conduct the individual re-examination of
Grobest, see, e.g., Reconducted AR4 Final I&D Mem. cmt. 1 at 5
("Given the unique circumstances surrounding this review,
including the Final Judgment [in Grobest II] and the request for
review by Petitioners, [Commerce] must conduct the individual
examination of Grobest as ordered by the Court."), had Commerce
been inclined to accept Grobest's request to discontinue the re-
examination, the parties could have moved under USCIT
R. 60(b)(6) for relief from the judgment order in Grobest II.

[84] Reconducted AR4 Prelim. I&D Mem. at 7.

[85] Id.

in its favor,"[86] so too the prevention of abuse where Commerce
expends resources to initiate an individual examination – and
the respondent seeks to withdraw its participation when it
changes its mind about the benefit of such examination and
prefers the 'all others' rate instead – is a reasonable basis on
which Commerce may decline to abort its examination.

Accordingly, because Commerce's determination to
continue its re-examination of Grobest notwithstanding Grobest's
change of heart was reasonable on the record presented here, it
is supported by substantial evidence, and is therefore affirmed.

III. Given Its Uncontested Factual Findings, Commerce Properly
     Used Adverse Facts Available to Establish Grobest's
     Antidumping Duty Rate.

Regarding the antidumping duty rate ultimately
established for Grobest as a result of Commerce's re-
examination, Grobest argues that this rate was "impermissibly
punitive."[87]  But Grobest does not challenge the particular
findings on which Commerce based this rate.[88]  Specifically,
Commerce found that "Grobest withheld requested information, and

---

[86] Antidumping Duties; Countervailing Duties, 62 Fed. Reg.
27,296, 27,317 (Dep't Commerce May 19, 1997) (final rule)
(discussing 19 C.F.R. § 351.213(d)(1)).

[87] Pl.'s Br., ECF No. 24, at 20, 22.

[88] See id.

significantly impeded this proceeding," within the meaning of

19 U.S.C. §§ 1677e(a)(2)(A) and (C),[89] and that "Grobest has not

cooperated to the best of its ability," within the meaning of

19 U.S.C. § 1677e(b).[90]  Given these uncontested findings,

Commerce properly resorted to "the facts otherwise available in

reaching [its] determination,"[91] and properly "use[d] an

inference that is adverse to the interests of [Grobest] in

selecting from among the facts otherwise available."[92]  The

statute explicitly provides that "[s]uch adverse inference may

include reliance on information derived from . . . the

petition,"[93] and here Commerce selected a rate derived from the

petition.[94]  Because a dumping margin based on adverse facts

available "is not a punitive measure" when determined in

---

[89] Reconducted AR4 Final I&D Mem. cmt. 2 at 6.

[90] Id. at 6-7.

[91] See 19 U.S.C. § 1677e(a).

[92] See id. at § 1677e(b).

[93] Id. at § 1677e(b)(1).

[94] Reconducted AR4 Final I&D Mem. cmt. 2 at 7 & n.27.  Commerce also explained that this rate "is not punitive because it has been corroborated and continues to have probative value." Id. (citations to corroboration history omitted).  Grobest presents no specific challenge to this analysis. See Pl.'s Br., ECF No. 24, at 20-22.

accordance with the requirements of 19 U.S.C. § 1677e,[95] because

Commerce's uncontested findings regarding Grobest's withholding

of information and failure to cooperate satisfy Section 1677e's

requirements for Commerce's reliance on information derived from

the petition, and because, in the absence of a specific

challenge, the secondary information relied on appears to have

been properly corroborated in accordance with 19 U.S.C.

§ 1677e(c),[96] the rate established for Grobest as a result of its

re-examination in this reconducted review is affirmed.

### CONCLUSION

          For all of the foregoing reasons, Commerce's final

results with respect to Grobest in the reconducted fourth

administrative review of this antidumping duty order are

affirmed.   Judgment will issue accordingly.


                                   /s/ Donald C. Pogue
                              Donald C. Pogue, Senior Judge



Dated: July 30, 2015
       New York, NY



---

[95] KYD, Inc. v. United States, 607 F.3d 760, 768 (Fed.
Cir. 2010).

[96] See Reconducted AR4 Final I&D Mem. cmt. 2 at 7 & n.29.